### GANS v. WORMSER.

(Supreme Court, Appellate Division, First Department. June 6, 1902.)

SALE—RESCISSION—FRAUD—EVIDENCE.
     Evidence in action for price of stock sold *held* not to sustain verdict for defendant on the ground of rescission for fraud of plaintiff.

Appeal from trial term, New York county.

Action by Levi L. Gans against Tillie Wormser. From a judgment for defendant, and from an order denying a new trial, plaintiff appeals. Reversed.

Argued before HATCH, McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

A. J. Dittenhoefer, for appellant.
G. W. Gallinger, for respondent.

PATTERSON, J. A careful examination of the record in this case satisfies us that the verdict of the jury in favor of the defendant should have been set aside on the plaintiff's motion for a new trial on the ground that the evidence strongly preponderates against the affirmative defense to the cause of action asserted by the plaintiff. The action was brought on a check given by the defendant to the plaintiff upon a purchase of shares of stock in a manufacturing corporation called the "American Box Trap Company." The transaction which culminated in the agreement of purchase and sale was conducted on the defendant's behalf by her husband, Leopold Wormser. The defendant had no personal dealings with the plaintiff. Her defense to this action is that during the negotiations leading up to the contract of sale the plaintiff fraudulently represented to Mr. Wormser, her agent, that certain machinery used in the business of the corporation had cost $22,000, whereas in fact it cost but $6,500; that she, relying upon that representation which had been communicated to her by her husband, agreed to purchase the stock; that thereupon she gave her check payable to the order of the plaintiff for the agreed price, but, discovering the falsity of the alleged representation immediately after the check was given, she elected to rescind the sale, and thereupon stopped the payment of the check at the bank upon which it was drawn.

The issue in the case is a narrow one of fact. The chief witness called for the defense was Leopold Wormser, who testified in positive terms that the plaintiff had represented to him that the machinery cost $22,000; that he had no means of ascertaining the cost of such machinery during the few days or weeks in which negotiations were pending between the plaintiff and himself for the purchase and sale of the shares of stock; that it was early in No-

vember, 1897, that he first spoke with the plaintiff concerning the matter; that about the 15th or 16th day of November he and the plaintiff went to the factory of the corporation; that he superficially looked at the machinery; that he did not have access to the books, and had no means of verifying the plaintiff's alleged statement respecting the cost of the machinery; and the intimation in his evidence is strong that in some indirect way he was prevented from examining the books of the corporation containing entries respecting the cost of the machinery. He further testifies that the day after the delivery of the check, he examined the books, and ascertained the truth with respect to the cost of the machinery, and thereupon he and his wife determined to rescind the contract. He also testifies that he called upon the plaintiff at his house, and there had a conversation with him respecting the rescission of the sale and the representations alleged to have been made; that the plaintiff at once repudiated the charge of having made such representations, but declined then to decide whether he would allow the transaction to be rescinded. The evidence shows that this was a small corporation, with a capital of $30,000, and it further shows that in addition to the sale of the stock Leopold Wormser was to have certain personal advantages by reason of such sale. He was to be associated in the management of the corporation as one of its officers. The stock to be sold was to be held conjointly by the defendant and the plaintiff, with other stock belonging to the plaintiff, so that the corporation could be controlled by those two persons, their combined stock representing the majority interest in the corporation.

In replying to the charge of a representation having been made that the machinery cost $22,000, the plaintiff admits that a conversation was had between Leopold Wormser and himself in which the amount of $22,000 was mentioned, but he asserts that that sum was named, not as the cost price of the machinery, but as the amount of money that had actually been invested in the corporation. The fact is clear, upon the concession of Leopold Wormser, that as soon as it was intimated to the plaintiff that he had stated that the machinery cost $22,000 he at once repudiated ever having made any such statement. It is further testified to by Howard S. Gans, a son of the plaintiff, that he was present at an interview between the plaintiff and Leopold Wormser at the plaintiff's house, at which interview Wormser stated that the plaintiff had not represented to him that the machinery cost $22,000, but that he (Wormser) had represented to his wife that the plaintiff had said so. If Howard S. Gans is correct in his testimony, the story of the representation as given by Leopold Wormser on the trial was a pure fabrication. We find nothing of a direct character in this record to impeach the testimony of Howard S. Gans, but it may be open, as the trial judge thought, to the criticism that it is the testimony of an interested party, in the sense in which a son would be interested in supporting his father in the refutation of a charge of fraud. If there were no other circumstances in the case to affect the subject, we might feel obliged to accept as ultimate the finding of the jury in favor of the defendant; but there

are two other considerations quite material in the case, and which
have an important bearing upon the truthfulness of Leopold Worm-
ser's testimony. It is claimed by the plaintiff that the charge of
fraudulent representations is a concoction of Leopold Wormser, to
enable him and his wife to escape from the obligation of the contract
into which they deliberately entered. The plaintiff asserts that he
gave full information as to everything connected with the business
of the corporation so far as he was asked, and that every source of
information was open to Leopold Wormser during the whole progress
of the negotiations; that he was at liberty to examine the books;
that he was at the factory from time to time; that he did examine the
books; that nothing was concealed from him, and that he was spe-
cifically informed during the progress of the negotiations that the
corporation was acting under patents; that those patents had been
assailed, and that a litigation was pending concerning them; and that
Leopold Wormser was referred to the attorneys having charge of
that litigation for the corporation for information as to the business
of the corporation. It was quite to the interest of the defendant and
her husband that they should avoid the inferences to be drawn from
this contention of the plaintiff, and thereupon Leopold Wormser
swore that he had never gone to the office of the attorneys of the
corporation to inquire as to the business of the corporation in their
charge. In this he was flatly contradicted by the testimony of Mr.
Stern, of the firm of Stern & Rushmore, one of the attorneys refer-
red to. Mr. Stern swears that Wormser came to his office, and said
he had been talking with Mr. Gans (the plaintiff) about going into
the box trap business, and asked him what he knew of it, and Mr.
Stern replied, "Why don't you speak to my brother-in-law Mr. Jack
Stern?" Thereupon Wormser was taken to the room of Mr. Jack
Stern, and Mr. Stern said to his brother-in-law, "Wormser wants to
speak to you about the box trap business; tell him what you can."
In addition to this, Wormser had testified that he had not exam-
ined, and had no opportunity to examine, the books of the corpora-
tion before the contract was closed and the check was given. In
this he is again contradicted by the bookkeeper of the corporation,
the witness Knetine. This witness swears that Wormser had access
to the books for four or five days,—entire access to everything, even
to the safe; that Wormser made an examination of the books before
the 13th of November; that he had access to the ledger, and exam-
ined it; and that the ledger was the book which contained the ma-
chinery account. The check in suit was not given until the 3d of
December, and the evidence of the bookkeeper is that for many days
previous Leopold Wormser was engaged in the examination of the
books, thus corroborating the plaintiff's testimony that Wormser had
free access to all the books and papers of the corporation, and an
abundant opportunity to ascertain the exact situation of the affairs
of the corporation, especially with reference to the machinery account,
in which account the cost of the machinery is stated at $6,500 and no
more. It is quite apparent from this record that the jury did not
give effect to the whole of the testimony, and we think must have
misapprehended the nature and purport of part of it, as would appear

.from the colloquy that took place between some of the jurors and the court after the jury had been charged. This is peculiarly a case 'in which, upon the facts and in the state of the record, justice requires 'that a new trial should be had. The order denying the motion for ·a new trial should be reversed, and with it the judgment, and a new trial should be granted, with costs to appellant to abide the event. All concur.